FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

01 MAR 15  AM 10:

U.S. DISTRICT CO
N.D. OF ALABA

| | | |
|---|---|---|
| MARTHA POSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV-00-PT-3757-E |
| | ) | |
| GREAT RIGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

ENTERED

MAR 15 2001

## MEMORANDUM OPINION

This cause comes to be heard upon defendant Great Rigs, Inc.'s ("the defendant") Motion

to Dismiss, filed on January 18, 2001, and Motion for Summary Judgment, filed on February 1,

2001.

## UNDISPUTED FACTS

The defendant, an Indiana corporation, is a wholly-owned subsidiary of ADESA

Corporation, also an Indiana corporation. Its primary business is the transportation of motor

vehicles, and it operates thirteen offices in eleven different states. At all times pertinent, the

defendant maintained a self-funded health and disability plan for all employees. The plan

administrator is ADESA Corporation and the claims administrator was, at the time in question,

The TPA, both in Rockford, Illinois.[1] The responsibility for sending out COBRA notices and the

tracking of COBRA participants rested with an administrative company called Cobra

---

[1] The TPA's name has now changed to "Benesight."

Compliance Company.

Ordinarily, upon the occurrence of a COBRA "qualifying event" (an event that qualifies a participant for the opportunity to elect extended coverage), such as termination of employment, the defendant's on-site human-resource personnel would submit the former employee's pertinent information to the Cobra Compliance Company. That company would then send the former employee a five-page COBRA continuation notice packet with an election form. It is the local office's responsibility to notify the Cobra Compliance Company and the claims administrator of premium payments received from the participating former employee. Cobra Compliance Company then tracks the participant during the coverage period and provides notice when the coverage expires or when the plan changes.

The defendant hired Plaintiff Martha Posey ("the plaintiff") on September 29, 1998. She became eligible for health insurance benefits under the defendant's self-funded plan on November 1, 1998. The plaintiff elected coverage for herself and her child, and paid the premiums through payroll deduction. The plan covered the plaintiff through her termination date, January 4, 1999.

Two days after her employment with the defendant ended, on January 6, 1999, the plaintiff began a new job, with Mortgage America. As of February 1, 1999, she was covered under that company's Blue Cross/Blue Shield plan. On January 17, 1999, the plaintiff received medical treatment at Brookwood Hospital. Although the exact cost of this treatment is in dispute, it was, at most, $2,230. The plaintiff first submitted part of this cost in a claim to Blue Cross/Blue Shield, but the claim ultimately was denied because she was not covered until

February 1.[2]  On July 9, 1999, the plaintiff submitted the January 17 medical expenses to the defendant's claims administrator, The TPA.  On August 6, 1999, The TPA denied the claim because the plaintiff's coverage had ended on January 4.  The plaintiff tried to submit her claim to The TPA a second time, on May 12, 2000; it was, again, denied, on May 24, 2000, for the same reason.  After the second denial of the claim, the plaintiff did not attempt to contact the defendant in any way.  The plaintiff also did not attempt to contact the defendant regarding the denials of the claims after she had received the denial letters.

The defendant admits that, neither at the time of the plaintiff's qualifying event, nor at the time that the TPA denied the plaintiff's January 17 medical expenses, nor at any time before October 4, 2000, did the defendant provide the plaintiff with notice of her right to extend her coverage under COBRA.  After waiting for a period of about a year after the second denial, the plaintiff filed a complaint against the defendant with the Department of Labor.  The Pension and Welfare Benefits Section of the Department of Labor called the defendant on October 4, 2000, to notify the defendant of the plaintiff's complaint.

After receiving notice of the complaint, the defendant's human resource manager promptly notified the The TPA, the plan administrator, and the Cobra Compliance Company of the failure of notice.  That same day, October 4, the Cobra Compliance Company sent the COBRA notice and election form to the plaintiff.  The plaintiff returned the election form and a check for the first month's premium on November 3, 2000.[3]

---

[2]  Shortly thereafter, on February 19, the plaintiff underwent hernia surgery.  This surgery was covered by her Blue Cross/Blue Shield insurance, and is not at issue here.

[3]  The plaintiff's complaint and affidavit incorrectly claim that the plaintiff did not receive notice of her COBRA rights until November 4, 2000.  Complaint, p. 3; affidavit, p. 3.  Considering the fact that the plaintiff returned the election form and check to the defendant on November 3, 2000, this court cannot conceive how, in the normal space-time continuum, this allegation could be accurate.  Furthermore, the election form, produced by the

3

On November 27, 2000, the Plan Administrator's counsel wrote a letter to the plaintiff. In the letter, attached to the defendant's Motion for Summary Judgment as Exhibit B, counsel stated:

> "Great Rigs would propose to take the following action in resolution of this matter: (1) Great Rigs will retroactively honor the COBRA election and provide such coverage (i.e., pay any medical expenses) for any claims you have incurred during the eighteen (18) months such coverage would have been effective; and (2) Great Rigs will not seek to recover any of the insurance premiums which would otherwise have been due from you in order to retain the coverage. In this manner, you will be placed in a better financial position than you would have enjoyed had the opportunity been communicated and the election timely made. You will have received all of the benefit of the coverage without having paid any of the premiums."

The plaintiff received the defendant's letter and, on December 1, wrote the following response:

> "This will acknowledge receipt of your letter of 11/27/00 convaying [sic] your offer of settlement. It is difficult to evaluate this offer stated in terms of action rather than cash. I have discussed this problem with an attorney . . . he can expect to recover up to $60,000.00 medical bills that have not been paid and bills that have been paid plus a letter written to creditors and credit bureaus. I am willing to settle with you direct [sic] for a cash payment of $25,000.00, and a letter written to collection agencies and . . . credit bureaus. Due to the running of the statute of limitations, it will be necessary for me to allow the attorney to represent me and file suit imidiately [sic] unless we can make a settlement on or before 12/20/00."

Defendant's Exhibit C.

The defendant replied to the plaintiff in a letter dated December 28, 2000:

> " . . . I must respectfully reject your demand for payment of $25,000. As indicated in my previous correspondence, Great Rigs is prepared to pay all medical bills incurred during the relevant period, in addition to waiving all claims to premium payments for which you would otherwise be obligated. If you can

---

plaintiff herself as Exhibit 7 to her Opposition to Summary Judgment, bears her signature, which is dated October 9, 2000. This mistake, however, is not the complaint's only inaccuracy: it alleges that the defendant employed the plaintiff for six months. The plaintiff was actually an employee of the defendant for only three months.

provide copies of correspondence or other documentation evidencing the claim of
harm to your credit rating, we would further be willing to send letters of
explanation to relevant parties. . . . I would urge you to reconsider your rejection
of this offer so that this matter can be resolved without . . . litigation."

Defendant's Exhibit D.

The plaintiff filed the instant complaint with this court on December 29, 2000. The

single-count complaint, alleging a violation of the COBRA notice provisions, seeks to recover,

among other relief, compensatory damages and a statutory penalty against the defendant.

## DISPUTED FACTS

The disputed facts in this case center on certain conversations that the plaintiff claims

that she had with the defendant's human resources representative, as well as the plaintiff's

receipt of a "summary plan description" (SPD) of the defendant's benefits. The plaintiff claims

to have discussed her insurance benefits with the defendant's human resources manager, Nancy

Knight, on at least four occasions. Posey affidavit, p. 2. The plaintff alleges that she specifically

attempted to discuss her COBRA rights with Knight, but that Knight was "indignant," "rude,"

and unhelpful. Id. at 3. The plaintiff also asserts that, had she been informed of her COBRA

rights, she would have "elected to take the COBRA coverage during the month of January, 1999,

until [she] became eligible for coverage with [her] subsequent employer, Mortgage America."

In her own affidavit, Knight disputes speaking with the plaintiff at any time after the

plaintiff's termination, other than a conversation on February 10, 1999, during which the

plaintiff only requested that Knight send evidence of her prior health coverage to her new

employer and to Blue Cross/Blue Shield. Knight affidavit, p. 4. Knight claims that the plaintiff

never mentioned extended insurance coverage to her, or even uttered the term "COBRA." Id.

She asserts that, other than that one conversation, the only other time she was contacted about

5

the plaintiff was on October 4, 2000, when the Department of Labor called her to notify the defendant about the plaintiff's complaint.

Knight claims that she knows that the plaintiff did not attempt to discuss COBRA or extended insurance coverage during the February 10 conversation, or at any other time. Knight claims that, had the plaintiff seemed confused about her COBRA rights, Knight would have questioned her further, would have discovered that the plaintiff had not received the notice, and would have immediately called Cobra Compliance to determine the reason for the failure. Id. In any event, she assumes responsibility for the failure to send the plaintiff's information to Cobra Compliance, and claims that "[she] made a mistake which was in no way intentional." Id.

The next disputed fact concerns the plaintiff's receipt of the defendant's SPD. The defendant routinely gives an SPD to each employee during its orientation program. The SPD contains a description of both the employees' rights to COBRA continuation as well as the administrative procedure to follow in case employees experience problems with their coverage. Knight claims to have held a 30-45 minute orientation session with the plaintiff on October 21, 1998. Id. at 3. Knight asserts that, as is her customary practice, she reviewed the benefits outlined in the SPD with the plaintiff. Id. at 4. Furthermore, Knight claims that, as part of her customary practice, she reviewed the plaintiff's COBRA continuation coverage with her at that time. Id. Finally, Knight asserts that at the end of the orientation session, before the plaintiff left her office, Knight "handed her the SPD along with [other benefits materials]." Id. Before she left, both Knight and the plaintiff signed the plaintiff's medical enrollment form. Id. at 3-4.[4]

The plaintiff disputes Knight's affidavit with statements in her own affidavit.

---

[4] In a recorded telephone conference on March 9, 2001, plaintiff's attorney stated that the plaintiff called the defendant and asked about her "COBRA rights."

Specifically, the plaintiff states that "I do not remember receiving documentation resembling the

Summary Plan Description presented by Great Rigs in support of its Motion for Summary

Judgment." Posey affidavit. at 2. According to the defendant, this statement conveniently states

the technical truth, but connotes a deeper falsehood. The defendant claims that, by mistake, it

submitted, with its Motion for Summary Judgment, a copy of its SPD that had been distributed a

year after the plaintiff's brief employment with it. The covers of the SPD that the plaintiff

would have received in 1998 and the one attached to the defendant's Motion for Summary

Judgment are two different colors. The defendant claims, however, that the descriptions of the

benefits contained in the two pamphlets are "nearly identical." Knight affidavit, p. 7. Therefore,

according to the defendant, when the plaintiff asserted in her affidavit that she had not received

anything resembling the SPD attached to the defendant's Motion for Summary Judgment, she

was stating the misleading technical truth that the cover of the SPD that she actually did receive

did not resemble the cover of the SPT attached to the motion.

Finally, the defendant disputes the computation of the plaintiff's medical bills. The

plaintiff claims that the medical bills at issue amount to $2,230. The defendant points out,

however, that the only bills that the plaintiff has submitted in support of her complaint amount to

just $1,861.80.

**STANDARDS**

**Motion to Dismiss**

Rule 12(b)(6) tests the legal sufficiency of a complaint. When considering a Rule

12(b)(6) motion, the court assumes that all factual allegations pled in the complaint are true.

United States v. Gaubert, 499 U.S. 315, 327, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). All

factual allegations are to be construed in the light most favorable to the plaintiff. Brower v.

7

County of Inyo, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989). Usually, a complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that will entitle him to relief. In re Johannessen, 76 F.3d 347, 349 (11th Cir. 1996).

**Summary Judgment**

A motion for summary judgment is to be granted if there is no genuine issue of material fact. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. The evidence of the non-moving party is to be believed, and the court is not to attempt to perform jury functions such as credibility determinations. Id. After considering everything in the record, all permissible inferences are to be drawn in favor of the non-moving party. Clinkscales v. Chevron USA, Inc., 831 F.2d 1565, 1570 (11th Cir. 1987).

When the non-moving party has the burden of proof at trial, it must come forward with sufficient evidence on each element that must be proved. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). If the evidence is merely colorable or is not significantly probative, summary judgment may be proper. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). Summary judgment is appropriate if on any element there would be insufficient evidence to require submission of the case to a jury. Earley, 907 F.2d at 1080. "The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such circumstances, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all

8

other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 327 106 S. Ct. 2548, 2555 (1986).

<strong>ARGUMENT</strong>

**Administrative remedies under ERISA**

The defendant argues that it deserves not only summary judgment as a matter of law, but also dismissal pursuant to Rule 12.(b)(6), because the plaintiff's complaint, in reality, fails to state a claim upon which relief can be granted. Specifically, the defendant contends that the plaintiff did not exhaust her administrative remedies before bringing this action. The defendant argues that it is an employee benefit plan under the definition found in ERISA, because it is an "employee welfare benefit plan" funded by insurance. Therefore, the plaintiff contends, this action is governed by ERISA.

The defendant characterizes the plaintiff's claim as both "an action for benefits under an employee welfare benefit plan as defined in ERISA § 3(1), 29 U.S.C. § 1002(1)," and as a "claim arising under ERISA § 502(a)(1)(A), 29 U.S.C. § 1166(a)(4)," and argues that, therefore, the claim is a "statutory claim arising under ERISA." It argues that the plaintiff has failed to exhaust the available ERISA administrative remedies, as well as the remedies set forth in the SPD. The defendant cites to Byrd v. MacPapers, Inc., 961 F.2d 167 (11th Cir. 1992) for the proposition that plaintiffs in ERISA cases must not only exhaust all available administrative remedies before bringing an action based either on a claim for benefits or a statutory violation, but also plead in the complaint that she has taken those steps. For further support, it cites to Perrino v. Southern Bell Telephone & Telegraph Co., 209 F.3d 1309 (11th Cir. 1997) and Counts v. American General Life & Accident Insurance Co., 111 F.3d 105 (11th Cir. 1997). While the defendant notes that a narrow exception to the doctrine of exhaustion exists when the

9

administrative remedies would be futile or the remedy inadequate, it asserts that there is no evidence that the ERISA claims procedure would entail such results for the plaintiff. With regard to the statutory notice violation claim, the defendant, again, argues that the plaintiff's complaint is fatally deficient because it identifies neither the Plan Administrator nor the specific plan.

The defendant contends that the evidence shows that the plaintiff did not exhaust ERISA's administrative remedies, even though the ERISA claims procedure appeared on page 43 of the plaintiff's SPD[5]. According to the defendant, although the plaintiff twice submitted the claim, which was twice denied, she did not notify the defendant of her alleged disagreement with her medical coverage for almost two years after the first denial. The defendant also notes that, as soon as the plaintiff finally alerted it to its failure to provide notice, it offered to correct the problem by paying the plaintiff's medical bills, waiving the applicable premiums, and even sending letters to her creditors on her behalf. The plaintiff then filed suit fewer than 90 days from the first time that she notified the defendant of the failure of notice.

The plaintiff, citing no authority, argues that the exhaustion requirement does not apply in the case of a plaintiff who is not a plan participant. She also notes that the defendant has not presented any authority that specifically discusses exhaustion in the context of a suit to recover for COBRA notice violations. She asserts that, in suits for the violation of notice provisions, the exhaustion of administrative remedies is not required. The plaintiff also argues that she is not bound by the procedure outlined in the SPD because she did not receive an SPD.[6]

---

[5] The applicable administrative procedure for claims under ERISA is found at 29 CFR 2560.503-1.

[6] The plaintiff disputes the defendant's assertion that she received an SPD during her orientation meeting with Knight, even though Knight asserts that it was her standard practice to give the employee an SPD as part of the orientation packet, and go over the SPD with the employee during the orientation meeting. The plaintiff's signature

The defendant replies that, because COBRA is part of ERISA, the exhaustion requirement applies to all suits to enforce COBRA provisions just as it would apply to all suits to enforce ERISA provisions.  The defendant then argues that Eleventh Circuit case law is replete with cases that require the exhaustion of administrative remedies under ERISA.  The defendant cites to Counts, 111 F.3d at 108, an ERISA failure of notice case, in which the court held that the plaintiff must exhaust his administrative remedies, even when the defendant admits that its notice was deficient.  The defendant argues that the reason for the dearth of COBRA failure of notice claims is that in the COBRA cases, the plaintiffs gave the defendants an opportunity to correct the notice deficiencies, but experienced other problems upon which they based their suits.  The defendant notes that in Curry v. Contract Fabricators Incorporated Profit Sharing Plan, 891 F.2d 842 (11th Cir. 1990), the plaintiff notified the defendant that he had not received his COBRA notice.  The defendant did not correct the deficiency, and refused to send the COBRA continuation documents, even after the plaintiff's attorney requested them.  The court calculated a penalty from the date that the plaintiff informed the defendant about the lack of notice.

**Statutory penalty**

With regard to the plaintiff's claim for civil penalties under 29 U.S.C. § 1132, the defendant argues that the civil penalty provision is enforceable only against plan administrators, citing Vincent v. Wells Fargo Guard Services, Inc., 44 F. Supp. 2d 1302 (S.D. Fla. 1999)(defendant could not be penalized under civil notice penalty because defendant was not plan administrator; defendant's failure to notify plan administrator of qualifying event did not

---

appears on a form that all employees are required to sign at the end of the orientation meeting.

11

change outcome), and <u>Hamilton v. Mecca, Inc.</u>, 930 F. Supp. 1540, 1553 (S.D. Ga. 1996)("The

duty to notify a terminated employee of his rights under COBRA resides exclusively with the

plan administrator, while the ultimate duty to assure that an employee receives COBRA benefits

resides exclusively with the plan sponsor."). The defendant argues that the complaint's claim for

statutory penalties is fatally deficient because it does not name the plan administrator as a party.

The defendant further argues that it deserves summary judgment upon the statutory

penalty claim because the statutory penalty, an amount set at the court's discretion, should not

apply when there is no evidence that the defendant acted in bad faith. The defendant refers to

several cases in which courts imposed a statutory penalty of upon defendants who had acted in

bad faith toward the insured employee. For example, the defendant cites to <u>Curry</u>, 891 F.2d at

848 n. 12. in which the Eleventh Circuit held that the defendant had "fraudulently" used its profit

sharing plan to deny the plaintiff his rightful retirement benefits and to punish him for leaving.

In imposing the statutory penalty, however, the court awarded only $800 to the plaintiff, when it

could have awarded $24,000, because it took into account the relative "equities of the case." <u>Id.</u>

In <u>Brown v. Neely Truck Line, Inc.</u>, 884 F. Supp. 1534 (M.D. Ala. 1995), the discretionary

penalty amounted to only $10 per day because the plaintiff could not prove, to the court's

satisfaction, that the defendant had acted in bad faith. The defendant argues that, if a plaintiff

who proves fraudulent misconduct and retaliation can receive only $800 total, and a plaintiff

who can prove only a low level of bad faith can receive just $10 per day, the plaintiff in the

instant case should receive no statutory penalty award because she cannot show <u>any</u> evidence of

bad faith. The defendant maintains that its quick actions in response to the Department of

Labor's telephone call regarding the failure to provide notice weighs heavily against a finding of

bad fath.

The plaintiff argues that, because the defendant failed to provide her with notice of her COBRA rights, it should be held to the strict letter of the law, and should be "punished" with the maximum statutory penalty, which, after 1997, is $110 per day for each day that the notice provisions are violated. The plaintiff argues that, therefore, the defendant should be required to pay $110 per day from the date that she was terminated in January, 1999, until October 4, 2000.[7] The plaintiff cites to Daughtrey v. Honeywell, Inc., 3 F.3d 1488, 1494-1495 (11th Cir. 1993), in which the Eleventh Circuit stated that bad faith is not necessarily a prerequisite for enforcing the civil penalty provision.

The defendant replies that, even if this court were to impose a statutory penalty upon it, the penalty should only last from the date of the plaintiff's termination until the date that she became covered under Blue Cross/Blue Shield. According to the defendant, even if it had provided the plaintiff with timely notice of her COBRA rights, and even if the plaintiff had elected to continue coverage, the defendant would have canceled the coverage as soon as the plaintiff's Blue Cross/Blue Shield insurance became active, on February 1, 1999. The defendant would have been able to terminate the plaintiff's continued coverage, as long as there were no pre-existing coverage issues, pursuant to 26 C.F.R. § 54.4980B-7. The defendant argues that because its liability for the plaintiff's medical expenses stopped on February 1, 1999, it would be unreasonable to impose a penalty based upon a twenty-one month time-span in which the plaintiff was covered by other insurance. It continues to argue, however, that, while the plaintiff has introduced absolutely no evidence of bad faith, it has produced evidence of its good faith

---

[7] The plaintiff actually argues that she should receive the statutory penalty until November 4, 2000; however, since this court has already noted her inaccurate allegations regarding the date that she received the notice, *supra*, substitution of the correct date for the incorrect date is proper here.

attempts to rectify its admitted mistake.

The defendant further suggests that the plaintiff has demonstrated bad faith in this case. It asserts that the plaintiff could have informed it that she had not received the COBRA notice as early as March 17, 1999, when her first claim for coverage was denied by The TPA, or at any time thereafter. The defendant implies that the plaintiff, with full knowledge of the defendant's mistake, waited until a few weeks before the statute of limitations ran out on the claim in order to try to recover from the defendant the maximum statutory penalty possible, or at least a hefty cash settlement in exchange for dropping the suit. The defendant argues that, while the plaintiff asks this court strictly to enforce a statutory penalty in the absence of a showing of bad faith, she also asks this court to ignore applicable exhaustion requirements.

The defendant contends that the plaintiff's actions belie her complaint and her affidavit. First, the defendant highlights paragraph 17 of the plaintiff's complaint, in which she pleads her belief that her medical coverage extended through January, 1999. The defendant argues that, while most people who knew believed that their former insurance would extend through the end of January, and who knew that their new insurance would not begin until February would submit January medical expenses to the former insurance company, that the plaintiff submitted her January medical bills to Blue Cross/Blue Shield demonstrates that she really did not believe that her Great Riggs insurance would cover them. The defendant also notes that the plaintiff's allegations of length of employment, dates of notice, and expenses are inaccurate. The defendant finally points out that the plaintiff has presented nothing but bald assertions that she did not receive an SPD, and that she spoke to Knight at least four times-- or even one time-- about COBRA continuation.

## CONCLUSION OF COURT

The court concludes that the plaintiff cannot maintain a statutory penalty action because she has not brought the action against the plan administrator.  The statutory section in question, 29 U.S.C. § 1132(c), is entitled "Administrator's refusal to supply requested information; penalty for failure to provide annual report in complete form."  The specific section of 1132(c) that authorizes the statutory penalty in question reads "Any <u>administrator</u> (A) who fails to meet ther requirements of paragraph (1) or (4) of section 606 or section 101(e)(1) [29 U.S.C. § 1166(a)(1) or (4) or § 1021 (e)(1)] with respect to a participant or beneficiary or (B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary . . . may in the court's discretion be <u>personally</u> liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal . . . ." (emphasis added).

According to the definitions section, found at 29 U.S.C. 1002, the "administrator" (here, ADESA Corporation) and the "employer" (here, Great Riggs) are two separate entities:

"(5) The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity."

"(16) (A) The term "administrator" means--

(i) the person specifically so designated by the terms of the instrument under which the plan is operated;

(ii) if an administrator is not so designated, the plan sponsor; or

(iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

15

(B) The term "plan sponsor" means (i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan."

The court further concludes that the plaintiff has not exhausted her administrative remedies. The action will be dismissed, without prejudice. Compare, Wilczyski v. Lumberman's Mut. Cas. Co., 93 F.2d 397 (7th Cir. 1996);  Diaz v. United Agricultural Employee Welfare Benefit Plan & Trust, 50 F.3d 1478 (9th Cir. 1995).

This _____ day of March, 2001,

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

16